## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

ABDURAKHMAN OROZALI UULU,          )
                                   )
    Petitioner,                    )
                                   )
v.                                 )          Case No. CIV-26-611-SLP
                                   )
SCARLET GRANT, et al.,             )
                                   )
    Respondents.                   )

## REPORT AND RECOMMENDATION

Petitioner Abdurakhman Orozali Uulu, a noncitizen[1], seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[2] Petitioner also filed an emergency motion for a temporary restraining order and preliminary injunction, Doc. 6. Chief United States District Judge Scott L. Palk referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded to both the petition and Petitioner's TRO motion, Doc. 15, and Petitioner replied, Doc 16. So the matter is at issue.

---

[1]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition and order his immediate release.

## I.    Factual background and procedural history.

Petitioner is a citizen of Kyrgyzstan who arrived at a port of entry in California and applied for admission on February 28, 2023. Doc. 1, at 2 (citing Exs. 1 & 2), 4. He fled his home country because of "persecution in his home country based on his political opinion and Convention Against Torture [(CAT)]," and sought safety in the United States. *Id.* at 4. A Department of Homeland Security (DHS) border official paroled him into the United States for one year for humanitarian reasons under 8 U.S.C. § 1182(d)(5) of the Immigration and Nationality Act (INA). *Id.* & Ex. 2, at 2; Doc. 15, at 8 & Ex. 1. DHS charged him as inadmissible under § 1182(a)(7)(A)(i)(l) of the INA for lacking a valid immigrant visa or entry document at the time of his application for admission. Doc. 1, at 4 (citing Ex. 4).

DHS issued Petitioner a Notice to Appear (NTA) for standard removal proceedings before an Immigration Judge. Doc. 1, Ex. 2. In 2024 he sought asylum and withholding of removal, and relief under the CAT. Doc. 1, at 4 (citing Ex. 4). Petitioner's removal proceedings are pending with an individual hearing scheduled for May 12, 2026. *See* Executive Office of Immigration

Review Automated Case Information, https://acis.eoir.justice.gov/en/ (last visited May 8, 2026).

On November 14, 2025, Immigration and Customs Enforcement (ICE) arrested Petitioner while working as a truck driver. Doc. 1, at 2. Petitioner maintains he complied with the conditions of his parole and all instructions from immigration authorities and that he has no criminal history. *Id.* at 4-5.

## II.    Petitioner's claims.

Petitioner raises four grounds for relief:

Ground One: Unlawful detention in violation of the INA;

Ground Two: Unlawful termination of his parole;

Ground Three: His detention without a bond hearing violates the Fifth Amendment's Due Process Clause; and

Ground Four: Lack of an individualized custody hearing in violation of his procedural due process rights.

*Id.* at 5-7. He seeks his immediate release on his own recognizance or under appropriate conditions of supervision or, in the alternative, order Respondents to provide him with a timely individualized bond hearing before a neutral IJ (or other appropriate adjudicator) at which the Government must bear the burden of justifying continued detention. *Id.* at 9. He asks the Court to declare that his ongoing detention is unlawful and that he is not "subject to mandatory detention under 8 U.S.C. § 1225(b), and that his detention without a bond

3

hearing violates the [INA], the Administrative Procedure Act, and the Due Process Clause of the United States Constitution." *Id.* He also seeks an order enjoining Respondents from re-detaining him unless he "violates a material condition of release or new circumstances arise that would lawfully warrant detention under the INA"; and attorneys' fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(2). *Id.*

## III.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV.    Discussion.

### A.    The Court has jurisdiction to consider Petitioner's claims.

Petitioner presented himself at a port of entry and was paroled into the United States, subject to conditions of release. Doc. 1, at 2, 4. Respondents

4

contend they are properly detaining Petitioner under 8 U.S.C. § 1225(b)(1) and that the Court has no jurisdiction to review the discretionary decision to re-detain Petitioner during the pendency of his removal proceedings. *See* Doc. 15, at 4 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)).

The Court should find that it has jurisdiction as Petitioner does not challenge a discretionary decision to terminate his parole. He instead argues he was arbitrarily detained in violation of his due process rights and the regulations governing his parole. Doc. 1, at 6-7. So, the Court has jurisdiction to consider Petitioner's claims. *See Ghamoushi-Ramandi v. Janecka,* 2026 WL 1107385, at \*3 (C.D. Cal. Apr. 20, 2026) ("Respondents argue Section[] . . . 1252(a)(2)(B)(ii) strip[s] the Court of jurisdiction to review Petitioner's custody determination and bond orders. However, Ghamoushi-Ramandi's claims are constitutional in nature and do not challenge actions that fall within the discretion of the Attorney General or the Secretary of Homeland Security. The first and second claims raise due process and regulatory challenges to the procedures Respondents afforded Petitioner when they re-detained him.") (alteration omitted) (internal citations and quotation marks omitted); *cf. Mwangi v. Terry,* 465 F. App'x 784, 787 (10th Cir. 2012) ("[T]o the extent Mr. Mwangi challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.").

5

### B.    Petitioner is entitled to due process.

Section 1225(b)(1) provides that "[i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). An individual detained as inadmissible upon inspection at the border can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)).

The parties submit Petitioner was temporarily paroled under § 1182(d)(5)(A) after arriving at the border. *See* Doc. 1, at 4; Doc. 15, at 4. His removal proceedings are ongoing, but Respondents re-detained him in November 2025. Doc. 1, at 2, 4.

Petitioner argues there was no reason to re-detain him and Respondents violated their own regulations and his due process rights when they arbitrarily revoked his parole. *Id.* at 6-7. Respondents argue Petitioner's mandatory detention under § 1225(b) does not implicate any due process rights because upon termination of his parole, he was subject to detention pursuant to § 1225

6

as an applicant for admission. Doc. 15, at 2-3. The Court should agree with Petitioner.

Because Petitioner had been released on humanitarian parole, "it is illogical to suggest that his re-detention is governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *See Rafibaev v. Noem*, 2026 WL 607559, at \*2 (D. Colo. Mar. 4, 2026). Nonetheless, even if the Court assumed Petitioner was subject to mandatory detention upon termination of his parole, "Respondents must still comply with the requirements of due process." *E-D-S-O- v. Hernandez*, 2026 WL 1067036, at \*3 (W.D. Wash. Apr. 20, 2026).

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)). Individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true

even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025).

When the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265, 268 (1954). Pertinent here, "[t]he statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to detainees." *Villanueva*, 801 F. Supp. 3d at 698-99.

### 1.    Statutory and regulatory framework.

Upon inspection at the time of his request for admission through a port of entry, Petitioner was first detained and then "paroled" into the United States under § 1182(d)(5). Doc. 1, Ex. 2, at 2.

Section 1182(d)(5) grants discretion to DHS officials to "parole into the United States temporarily under such conditions as [they] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Any revocation of this parole must be based on a decision by a DHS official that either "the purpose for which parole was authorized" has been accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8

8

C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating the DHS Secretary may revoke parole "when the purposes of such parole . . . have been served"). And the parole will only be terminated when "written notice" of this decision is served on the noncitizen. 8 C.F.R. § 212.5(e)(2)(i).

The Court acknowledges Respondents' argument that Petitioner's conditional parole was not arbitrarily revoked upon his arrest but expired by its own terms on, at the latest, July 3, 2025. Doc. 15, at 3. And so, Respondents argue that because Petitioner's parole expired, the regulations did not require notice to Petitioner. *See id.* at 2-3; *see also* 8 C.F.R. § 212.5(e)(1) (stating parole is automatically terminated without written notice "at the expiration of the time for which parole was authorized"). As such, they argue, he is detained under § 1225(b). *See* Doc. 15, at 2-3. But the undersigned finds Petitioner remained on parole even after the date of expiration.

"[T]he applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply." *Caisa Telenchana v. Hermosillo*, 2026 WL 696806,

9

at *7 (W.D. Wash. Mar. 12, 2026). So Respondents cannot rely on the automatic termination clause to justify Petitioner's parole revocation.

The Court also rejects Respondents' argument that Petitioner's detention, upon termination of his parole, must have necessarily reverted back to the statute that governed petitioner's original detention. Doc. 15, at 2-3. Section 1182(d)(5)(A) "does not state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." *Qasemi v. Francis*, 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025). Rather, the statute states that, following the expiration of parole, the noncitizen shall (1) "forthwith return or be returned to the custody from which he was paroled" and (2) "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

Section 1182(d)(5)(A) "recognizes that the parole physically happened, because it contemplates that the noncitizen must be returned to detention." *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 86 (D.D.C. 2025). So, § 1182(d)(5)(A) recognizes that noncitizens paroled under its authority are released into the United States. It would be illogical that these noncitizens would revert to being detained pursuant to § 1225(b)(1), which governs the inspection of noncitizens "arriving into the United States," instead

10

of considering them detained under another applicable authority. This is especially true given that § 1182(d)(5)(A) does not state that a noncitizen reverts to the status he or she possessed before the grant of parole.

In fact, § "1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025). The Court finds that § 1182(d)(5)(A) does not require Petitioner to be detained under the same statutory status as his original detention.

> ### 2. Respondents did not comply with the applicable regulations before revoking Petitioner's parole.

Respondents do not submit that an appropriate official made the discretionary decision to revoke Petitioner's parole. The charging document in play was issued to Petitioner when he was initially paroled. Doc. 1, Ex. 2 (NTA).

The undersigned finds that Respondents provided no notice to Petitioner about the termination of his parole when he was detained in November 2025, as § 212.5(e)(2)(i) requires. The lack of an individualized determination was in violation of the regulations governing the termination of parole. *See, e.g., E-D-*

11

*S-O-*, 2026 WL 1067036, at \*4 ("Nothing in the record shows Respondents provided Petitioner with written notice of revocation of his humanitarian parole, that the original purpose of his parole was accomplished, or that a DHS official with authority determined 'neither humanitarian reasons nor public benefit' warranted continued parole."); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 418 (S.D.N.Y. 2025) ("Respondents provide no indication that an individualized determination was made as to the revocation of Munoz Materano's parole; nor do they articulate, even now, either that the purpose for which Munoz Materano's parole was authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants his continued presence in the United States."); *see also Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1137-38 (D. Or. 2025) ("This is a grant of discretionary authority, but it has a mandatory requirement—parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").

### 3. Respondents violated Petitioner's due process rights when they summarily revoked his parole.

This Court analyzes Petitioner's due process claim to determine whether he has a protected liberty interest under the Due Process Clause, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Constitution. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460

(1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the government grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process]

13

Clause protects"). Respondents deprived Petitioner of his protected status when they revoked his parole and placed him in custody.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending a year on parole. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not challenge Petitioner's assertions that he was previously paroled and did not violate any laws or conditions of his parole. During his parole, Petitioner's interest in release grew even stronger as he worked and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he has not received any notice of the reason for his parole revocation and simple procedures exist which would mitigate those risks.

14

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at \*6 (E.D. Cal. Feb. 9, 2026). Petitioner received no procedural safeguards to determine whether the revocation of his parole and his detention were justified, and thus Respondents have detained him without any stated cause. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."); *see also Gualpa-Lumbi v. Hoover,* 2026 WL 452351, at \*11 (N.D. Ohio Feb. 18, 2026) ("[Petitioner] was previously released and permitted to go about living for years in the United States during the pendency of his immigration proceedings before being detained in 2025. . . . [which] show[s] that [Petitioner] is at risk of being erroneously deprived of his freedom.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining [P]etitioner without adequate notice and an opportunity to challenge the revocation of his release is low." *Saqib*,

2026 WL 350830, at *6. And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the government to follow its own regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not deemed necessary for two years.

The undersigned concludes Respondents breached their own regulations and violated Petitioner's due process rights when they summarily revoked his parole. Based on these findings, the undersigned recommends the Court grant the habeas corpus petition and release Petitioner from detention subject to the same conditions that governed his earlier parole.[3]

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition and **order his immediate release**

---

[3]    The Court finds that it need not reach Petitioner's remaining arguments under Grounds One and Three. As to Petitioner's request for EAJA fees, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention").

16

**subject to the same conditions that governed his earlier parole. The undersigned also recommends that the Court order the Government to certify compliance by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to Counsel for the Warden of the Cimarron Correctional Facility. Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker.[4]

The undersigned advises Respondents of their right to file an objection to this Report and Recommendation with the Clerk of this Court by May 11, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[5] The undersigned further advises the Government that failure to make

---

[4]    Adoption of this Report and Recommendation will moot Petitioner's pending motion for a temporary restraining order and preliminary injunction, Doc. 6.

[5]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").

timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 8th day of May, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE